UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION AT LEXINGTON

| | | |
|---|---|---|
| KIKI COURTELIS | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | |
| | ) | Civil Action No. |
| KAILEN ROSENBERG | ) | 5:20-cv-220 |
| | ) | |
| and | ) | |
| | ) | |
| GLOBAL LOVE MERGERS, INC. | ) | |
| d/b/a Kailen Love and | ) | **MEMORANDUM ORDER** |
| Life Architects | ) | **AND OPINION** |
| | ) | |
| *Defendants*. | ) | |

\* \* \*

This matter is before the Court on Defendants', Kailen Rosenberg ("Rosenberg") and Global Love Mergers, Inc. d/b/a Kailen Love and Life Architects ("KLLA")(collectively "Defendants"), Motion to Dismiss the action filed against them by Plaintiff Kiki Courtelis ("Courtelis") [DE 6]. For the reasons stated below the Motion to Dismiss is denied without prejudice because this matter is to be transferred to the Federal District Court for the District of Minnesota.

### I.  FACTUAL BACKGROUND

The Love Architects is a professional matchmaking firm that purports to serve as a matchmaker for single and elite men and women. [DE 5 at ¶¶ 14-15]. The Love Architects is a division of

KLLA. Rosenberg is the CEO and sole owner of KLLA. In 2016, Rosenberg began developing an application ("the Dating App") to modernize her matchmaking business. [*Id.* at ¶ 17].

In January of 2018, Courtelis reached out to Defendants' matchmaking service. [*Id.* at ¶ 36]. KLLA and Courtelis entered into a contract ("The Matchmaking Contract") on February 3, 2018, whereby Courtelis agreed to pay a $250,000 fee for the Elite Love Search Program plus additional hourly fees and travel expenses associated with the matchmaking search. [*Id.* at ¶ 39]. Plaintiff now claims that the matchmaking services were used to lure in wealthy clients, so that Defendants could exploit their vulnerabilities to persuade the clients to invest in the Dating App.

By June of 2018, Rosenberg had convinced Courtelis to invest in the Dating App. Courtelis claims she made the investment based on misrepresentations from Rosenberg including that she had invested millions of her own money and that Match.com and Mark Cuban were interested in purchasing the Dating App. [*Id.* at ¶ 53]. Essentially, Courtelis claims that Rosenberg never had any intentions of developing the Dating App, but instead was attempting to get more money from Plaintiff.

To invest in Dating App, Courtelis started her own company, Love Shopping, LLC ("Love Shopping"), which would then pay the business expenses associated with the Dating App including paying Rosenberg

a salary and allowing Rosenberg to use an American Express card with Love Shopping's name on the card. [*Id.* at ¶¶ 45, 85]. Courtelis is the sole owner of Love Shopping.

Alleging that Rosenberg made constant and unilateral changes to the Dating App and prevented Courtelis from communicating with Dating App developer, Courtelis decided to re-brand the Dating App as the Love Shopping Dating App. Courtelis also utilized an independent developer, Twin Vision Studios, Inc. ("TVS"), to evaluate the Dating App's viability. TVS concluded that the Dating App was incompetent and did not meet industry standards. [*Id.* at ¶¶ 68-69, 72]. On March 22, 2019, Courtelis incorporated another business, The Dating App, LLC, which then entered into an agreement with TVS to continue developing the Dating App. [*Id.* at ¶¶ 74-75].

Courtelis claims that while TVS was developing the Dating App, Rosenberg was consistently delaying the progress, making unilateral decisions, attempting to keep Courtelis uninformed by only having TVS communicate with her, planning important meeting for times Courtelis could not attend, and refusing to copy Courtelis in any emails. [*Id.* at ¶¶ 78-84]. Courtelis further claims that during the time the Dating App was being developed, Rosenberg made false guarantees about the Dating App and misrepresented how she was using Love Shopping funds, which were provided to fund the Dating App. [*Id.* at ¶ 85]. For example, while Rosenberg told Courtelis that the employees being paid by Love

Shopping were working on the development of the Dating App, Rosenberg was instructing her employees to perform services for Rosenberg's and Rosenberg's son's personal companies. [*Id.* at ¶ 86]. Rosenberg also used funds from Love Shopping for personal expenses related to her other businesses, while representing to Courtelis that she was only using the funds from Love Shopping for developing the Dating App. [*Id.* at ¶ 87].

In July of 2019, Courtelis informed Rosenberg that she no longer wished to invest in the development of the Dating App. [*Id.* at ¶ 90]. Rosenberg subsequently pulled Facebook ads paid for by Courtelis that had been specially created by Love Architects to find Courtelis a match and used the money to run ads for Love Architects, which Courtelis claims was an abrupt and unilateral termination of the Matchmaking Contract for which Courtelis was not notified. [*Id.* at ¶¶ 91-94].

Courtelis also claims that she did not receive all the services she contracted for under the Matchmaking Contract [*Id.* at ¶ 40]. Rosenberg failed to conduct appropriate background checks on the men she introduced Courtelis to as promised. [*Id.* at ¶ 96]. Additionally, Rosenberg used money Courtelis was paying under the Matchmaking Contract for personal or promotional matters for her other companies like charging Courtelis' credit card $37,058.19 for housing and $28,779.29 for flights related to a trip to Los Angeles to meet with people who would help in the matchmaking

4

process for Courtelis, while using the trip to shoot promotional videos for the Dating App and failing to ever produce the list of men Rosenberg supposedly found while there. [*Id.* at ¶ 95].

## II.   PROCEDURAL BACKGROUND

On April 15, 2020, Plaintiff filed the Complaint in Scott Circuit Court in the Commonwealth of Kentucky. However, on May 26, 2020, Defendants removed the case pursuant to 28 U.S.C. § 1441 as this is an action over which the US District Courts have original jurisdiction pursuant to 28 U.S.C. § 1332 due to diversity of citizenship.[1] [DE 1, Notice of Removal, ¶¶ 6-8].

On June 2, 2020, Plaintiff filed her first amended complaint ("the Complaint"), adding a few claims. [DE 5]. Plaintiff's six claims can be categorized into two groups. The first three claims relate to Plaintiff's investment in the Dating App ("the Dating App Claims"), while the latter three claims relate to the Matchmaking Contract ("The Matchmaking Claims").

In response, Defendants filed a Motion to Dismiss on June 16, 2020, arguing that Plaintiff signed a contract containing a mandatory arbitration agreement and that Plaintiff lacks standing to bring certain claims. If the Complaint is not dismissed, Defendants assert that the matter should be transferred to the

---

[1] While Plaintiff and Rosenberg are citizens of Kentucky, Defendant KLLA is a corporation organized and incorporated under the laws of Minnesota) and the amount in controversy exceeds $75,000.

Federal District Court for the District of Minnesota pursuant to 28 U.S.C. § 1404(a) due to a contractual agreement between the parties containing a forum-selection clause.

## III. ANALYSIS

### a. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides that a complaint may be attacked for failure "to state a claim upon which relief can be granted." To survive a Rule 12(b)(6) motion to dismiss, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)(citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "'[A] legal conclusion couched as a factual allegation' is not entitled to a presumption of truth." *Crawford v. Tilley*, No. 20-6391, 2021 U.S. App. LEXIS 30268, at *16 (6th Cir. Oct. 8, 2021)(citing *Iqbal*, 556 U.S. at 678). "A motion to dismiss is properly granted if it is beyond doubt that no set of facts would entitle the petitioner to relief on his claims." *Computer Leasco, Inc. v. NTP, Inc.*, 194 F. App'x 328, 333 (6th Cir. 2006).

When considering a Rule 12(b)(6) motion to dismiss, the court will presume that all the factual allegations in the complaint are true and draw all reasonable inferences in favor of the nonmoving party. *Total Benefits Planning Agency v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008)(citing *Great Lakes Steel*

6

*v. Deggendorf*, 716 F.2d 1101, 1105 (6th Cir. 1983)). "The court need not, however, accept unwarranted factual inferences." *Id.* (citing *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987)).

While generally in ruling on a motion to dismiss "matters outside of the pleadings are not to be considered by a court," certain exceptions apply. *Weiner v. Klais & Co.*, 108 F.3d 86, 88 (6th Cir. 1997). A court may "consider other materials that are integral to the complaint, are public records, or are otherwise appropriate for the taking of judicial notice." *Ashland, Inc. v. Oppenheimer & Co.*, 648 F.3d 461, 467 (6th Cir. 2011). Additionally, the Court may consider "exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. National Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

Defendants attach several exhibits to their Motion to Dismiss. Exhibit 3, the Matchmaking Contact, is mentioned repeatedly in the Complaint and many claims, like breach of the contract, integrally rely on the contract. Therefore, the Court will properly consider the contract in its analysis.

Because Defendants' arguments for dismissal of the two sets of claims are based on different legal theories and separate contractual agreements, the Court bifurcates the analysis focusing on one category at a time.

**b.   THE MATCHMAKING CONTRACT CLAIMS**

Plaintiff brings three causes of action related to the Matchmaking Contract: breach of contract, fraudulent indument, and negligent misrepresentation. These claims are only brought against Rosenberg personally and not against KLLA.

First, Plaintiff alleges breach of the Matchmaking Contract against Rosenberg personally, specifically that "Rosenberg violated the Contract by terminating it without notice or an opportunity to cure." [DE 5 at ¶ 130]. Second, Plaintiff alleges Rosenberg fraudulently induced her into the matchmaking contract because Rosenberg's "primary focus was on using her for investment purposes," not finding Courtelis a match. Specifically, Rosenberg did not conduct background checks on the men "as promised" or attempt to identify matches but "was using the money Ms. Courtelis had provided to her under the Matchmaking Contract to fund her other business and The Lodge Dating App." [*Id.* at ¶¶ 137–142]. Third, Plaintiff accuses Rosenberg of negligent misrepresentation because "Rosenberg negligently represented to Ms. Courtelis that they would provide matchmaking services designed to find Ms. Courtelis an elite life partner, that they would conduct background checks on all possible matches, and that they would consider only men of similar financial means to Ms. Courtelis as possible matches." [*Id.* at ¶ 149].

Defendants argue that the claims related to the Matchmaking Contract must be dismissed because they are subject to arbitration, and in the alternative, they must be dismissed under the doctrine of *forum non conveniens* because the Matchmaking Contract contains a forum-selection clause. Plaintiff does not dispute the validity or existence of either contract, but instead argues that Rosenberg as a non-signatory cannot enforce the arbitration clause and that reliance on *forum non conveniens* is misconstrued because the doctrine holds that the plaintiff's choice of forum should rarely be disturbed.

Because enforcement of the forum-selection clause would preclude the Court from determining the arbitration dispute, the Court first addresses the enforceability of the forum-selection clause. The Matchmaking Contract contains the following choice of law and forum-selection clause:

> This Contract is governed by the laws of the State of Minnesota, without regard to any conflict-of-laws analysis. Any litigation (including the confirmation of any arbitration award) between the Parties, to the extent permitted, must be brought in the District Court for the Fourth Judicial District, Hennepin County, Minnesota. By entering this Contract, Client agrees to submit to personal jurisdiction in the State of Minnesota. Nothing in this provision limits the scope or applicability of Section 3.2.

[DE 6-4, Matchmaking Contract, § 3.4].

"The enforceability of forum-selection clauses is governed by federal law." *Wilson v. 5 Choices, LLC*, 776 F. App'x 320, 327 (6th Cir. 2019); see also *Ranforest Café, Inc. v. EklecCo, L.L.C.*, 340 F.3d 544, 546 (8th Cir. 2003); *Minn. Supply Co. v. Mitsubishi Caterpillar Forklift Am., Inc.*, 822 F. Supp. 2d 896, 916 (D. Minn. 2011)("The Supreme Court thus squarely held 'that federal law, specifically 28 U.S.C. § 1404(a), governs the District Court's decision whether to give effect to the parties' forum-selection clause and transfer' a case to the agreed-upon forum."). Whether federal or state law is applied to determine the enforceability of a forum-selection clause is not disputed by the parties and because dismissal is warranted under both Kentucky, Minnesota, and federal law, there is no material conflict.

"Under federal law, forum-selection clauses 'are prima facie valid and are enforced unless they are unjust or unreasonable or invalid for reasons such as fraud or overreaching.'" *Fountain v. Oasis Legal Fin., LLC*, 86 F. Supp. 3d 1037, 1044 (D. Minn. 2015)(citing *M.B. Rests., Inc. v. CKE Rests., Inc.*, 183 F.3d 750, 752 (8th Cir. 1999)). "A forum selection clause should be upheld absent a strong showing that it should be set aside." *Wong v. PartyGaming, Ltd.*, 589 F.3d 821, 828 (6th Cir. 2009)(citing *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 595 (1991)).

Even though Rosenberg did not sign the matchmaking agreement, she can still enforce the forum-selection clause under two

different theories. First, several courts allow non-signatories to enforce a forum-selection clause against a signatory based on the theory of equitable estoppel, sometimes referred to as "alternative estoppel," when the signatory "must rely on the terms of the written agreement in asserting [its] claims against the non-signatory" in that the signatory's claim "makes reference to" or "presumes the existence of the written agreement" or "arises out of and relates directly to the agreement."[2] Second, a non-signatory may enforce the contract when there is a close relationship between the signatory and non-signatory party.[3]

---

[2] *Liles v. Ginn-La West End, Ltd.*, 631 F.3d 1242, 1256-57 (11th Cir. 2011)(citing *MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942, 947 (11th Cir. 1999); *CD Partners, LLC v. Grizzle*, 424 F.3d 795, 798 (8th Cir. 2005)(explaining that a non-signatory can enforce an arbitration clause against a signatory to the agreement if the signatory "must rely on the terms of the written agreement in asserting [its] claims against the nonsignatory"); *ResCap Liquidating Tr. v. LendingTree, LLC*, No. 19-cv-2360 (SRN/HB), 2020 U.S. Dist. LEXIS 48632, at *83 (D. Minn. Mar. 20, 2020)(discussing that when the matter involves "the estoppel of a *signatory* from avoiding arbitration with a nonsignatory" that "some courts have recognized a duty to arbitrate between a signatory and nonsignatory based on the close relationship between the two entities, as well as the relationship of the alleged wrongs to the nonsignatory's obligations and duties in the contract, and because the claims are intertwined with the underlying contract obligations"); *PRM Energy Sys. v. Primenergy, L.L.C.*, 592 F.3d 830, 835 (8th Cir. 2010)("Alternative estoppel typically relies, at least in part, on the claims being so intertwined with the agreement containing the arbitration clause that it would be unfair to allow the signatory to rely on the agreement in formulating its claims but to disavow availability of the arbitration clause of that same agreement."); *Villanueva v. Barcroft*, 822 F. Supp. 2d 726, 739 (N.D. Ohio 2011)(allowing the non-signatory to invoke the forum-selection clause after applying the equitable estoppel approach where "all of [the plaintiff]'s claims arise of the Escrow Agreement containing the forum selection clause").

[3] *BAM Navigation, LLC v. Wells Fargo & Co.*, No. 20-CV-1345 (NEB/ECW), 2021 U.S. Dist. LEXIS 27677, at *13 (D. Minn. Feb. 12, 2021)(allowing a non-signatory to compel arbitration because the non-signatory was the parent company of the signatory); *Ricketts v. Hybris AG*, No. 1:15 CV 277, 2015 U.S. Dist. LEXIS 194725(N.D. Oh. June 19, 2015)("The court notes that though SAP AG, Luedi, Thoma, and Kramer are non-signatories to the Plan, they are 'sufficiently "closely related" to the dispute' by virtue of their involvement in the execution of the Plan and Plaintiff's termination, enabling them to enforce the Plan's forum-selection clause."); *Holtzman v. Vill. Green Mgmt. Co. LLC*, No. 2:19-cv-11150, 2020 U.S. Dist. LEXIS 8235, at *23-24 (E.D. Mich. Jan. 17,

Under both the estoppel and closely related approach, this Court finds that Rosenberg can enforce the forum-selection clause against Plaintiffs. First applying the estoppel theory, the claims asserted by Plaintiff—breach of the matchmaking contract, fraudulent inducement, and negligent representation—arise out of the contract that contains the forum-selection clause. It would be impossible to bring a claim for breach of contract without making reference to or assuming the existence of that contract. More, the other two claims also assume the existence of the contract. In the Complaint and when elaborating on her claims, Courtelis points to promises contained in the contract to show how she was fraudulently induced and to explain the misrepresentations.[4] Because Plaintiff's claims are so intertwined with the contract that contains the forum-selection clause, it would be unfair to not hold Courtelis to the clause. Second, applying the close relationship theory, Rosenberg as the sole owner of the signatory is sufficiently

---

2020)("a non-signatory can enforce a forum-selection clause so long as the non-signatory is 'sufficiently "closely related" to the dispute' by virtue of its involvement in the execution of the agreement").

[4] "Rosenberg did not conduct appropriate background checks on any of the men considered for Ms. Courtelis as promised," "Rosenberg did not intend and did not identify matches of similar financial means to Ms. Courtelis as requested," "Rosenberg was using the money Ms. Courtelis had provided to her under the Matchmaking Contract to fund her other business and The Lodge Dating App," "Rosenberg used money provided by Ms. Courtelis for her personal [Facebook] ads and used it to run [Facebook] ads to promote The Love Architects and AH Love Design," "Rosenberg negligently represented to Ms. Courtelis that they would provide matchmaking services designed to find Ms. Courtelis an elite life partner, that they would conduct background checks on all possible matches, and that they would consider only men of similar financial means to Ms. Courtelis as possible matches." [DE 5 at ¶¶ 137–142, 142].

closely related to the dispute to enforce the forum-selection clause.

Having established that this is the improper forum, the Court next addresses the proper method of discharging the case. Specifically, the Court must decide if the case should be transferred or dismissed. "The common-law doctrine of *forum non conveniens* 'has continuing application [in federal courts] only in cases where the alternative forum is abroad,' *American Dredging*, 510 U.S., at 449, n 2, 114 S. Ct. 981, 127 L. Ed. 2d 285, and perhaps in rare instances where a state or territorial court serves litigational convenience best." *Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422, 430 (2007); *Onyx & Rose, LLC v. T1 Payments, LLC*, No. 3:19-CV-489-CRS, 2019 U.S. Dist. LEXIS 219879, at *8 (W.D. Ky. Dec. 23, 2019)(finding that "dismissing this case on the basis of *forum non conveniens* would be inappropriate" where the selection clause designated "the state or federal district court of Clark County, Nevada" because "this is not a case where the only alternative forum is abroad or in state court").

Instead, the Court will construe the motion to dismiss as a motion to transfer in accordance with 28 U.S.C. § 1404(a).

> The filing of only a 12(b)(6) motion, however, does not preclude a district court from *sua sponte* considering whether transfer is the better course, and many courts have exercised their discretionary power to do so. *Id.* at 299; *see e.g. Jumara*, 55 F.3d at 878 (ordering a transfer of venue although no motion to transfer was filed); *Reynolds Publishers, Inc. v. Graphics Fin. Group, Ltd.*, 938

13

> F. Supp. 256, 260 (D. N.J. 1996) (granting, *sua sponte*, a transfer of venue even though only a motion to dismiss was filed). In general, a transfer to an appropriate federal forum is preferable to a dismissal because it avoids repetitive refiling and associated fees, avoids possible statute of limitations problems, and ensures that the plaintiff will get his or her day in court. *See Wims v. Beach Terrace Motor Inn, Inc.*, 759 F. Supp. 264, 270 (E.D. Pa 1991); *Barnes v. Bonifacio*, 605 F. Supp. 223, 225 (D.C. Pa 1985).

*Kahn v. Am. Heritage Life Ins. Co.*, No. 06-01832, 2006 U.S. Dist. LEXIS 45749, at *23-24 (E.D. Pa. June 29, 2006). Case law is clear that a court has the authority to apply § 1404(a) in certain situations. *Union Elec. Co. v. Energy Ins. Mut. Ltd.,* 689 F.3d 968, 972 (8th Cir. 2012) ("There is authority supporting the district court's ability to sua sponte transfer a case under § 1404(a)."); *Haskel v. FPR Registry, Inc.*, 862 F. Supp. 909, 916 (E.D.N.Y. 1994) ("[S]ince a court may *sua sponte* consider transfer [ ], it is appropriate to consider the application of § 1404(a) analysis now rather than wait for defendant's inevitable motion to transfer.")(citing *Starnes v. McGuire*, 512 F.2d 918, 933-34, 168 U.S. App. D.C. 4 (D.C. Cir. 1974)(en banc)).

The Court's construal is appropriate for several reasons. First, in their Motion to Dismiss, Defendants state that "If the Court does not dismiss the Amended Complaint, this matter should be transferred to the Federal District Court for the District of Minnesota pursuant to 28 U.S.C § 1404(a)." Second, the parties briefed the issues relevant to a § 1404(a) transfer based on a

valid forum-selection clause because the parties discussed the merits of dismissal under *forum non conveniens*, for which the material analysis is the same. *Branch v. Mays*, 265 F. Supp. 3d 801, 808 (E.D. Tenn. 2017).[5] Third, as explained below, § 1404(a) is the more appropriate means of enforcing a forum-selection clause in this situation.

"The law is unsettled regarding whether Rule 12(b)(6) is an appropriate mechanism for enforcing a contractual forum-selection clause," and the "Eighth Circuit has also declined to take a position on the viability of Rule 12(b)(6) as an enforcement mechanism for a forum-selection clause." *Consol. Infrastructure Grp., Inc. v. USIC, LLC*, No. 8:16CV472, 2017 U.S. Dist. LEXIS 76576, at *19 (D. Neb. May 18, 2017)(citing *Rainforest Cafe, Inc. v. EklecCo, LLC*, 340 F.3d 544, 545 n. 5 (8th Cir. 2003)). However, the Supreme Court has clearly stated that Section 1404(a) is an appropriate way to enforce a forum-selection clause when the

---

[5] "Before proceeding to the *forum non conveniens* analysis, it must be explained why the Parties have had a full opportunity to brief the issues relevant to the Court's *forum non conveniens* analysis. In *Atlantic Marine*, the Supreme Court noted that 28 U.S.C. § 1404(a) is 'merely a codification of the doctrine of *forum non conveniens* for the subset of cases in which the transferee forum is within the federal court system.' 134 S. Ct. at 580. Accordingly, at least in the context of enforcement of forum-selection clauses, there is no material difference between the analysis of a motion to transfer under 28 U.S.C. § 1404(a) and a motion to dismiss under the *forum non conveniens* doctrine. *Id.* ('And because both § 1404(a) and the *forum non conveniens* doctrine from which it derives entail the same balancing-of-interests standard, courts should evaluate a forum-selection clause pointing to a nonfederal forum in the same way that they evaluate a forum-selection clause pointing to a federal forum.'). Because Defendant's Amended Motion to Dismiss expressly invokes 28 U.S.C. § 1404(a), the Court has before it all necessary information to engage *sua sponte* in a *forum non conveniens* analysis."

15

transferee forum is within the federal court system. *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 134 S. Ct. 568, 579, 187 L. Ed. 2d 487 (2013). The Minnesota District Court similarly noted the uncertainty concerning whether Rule 12(b)(6) is an appropriate mechanism for enforcing a forum-selection clause before ultimately choosing to focus primarily on Defendants' § 1404(a) motion: "Whether dismissal under Rule 12(b)(6) is ever a proper way to enforce a forum selection clause is subject to some debate." *MRP Trading I A, LLC v. Eberhart*, 526 F. Supp. 3d 470, 482 (D. Minn. 2021).

Other circuits similarly question the use of Rule 12(b)(6) in enforcing motions to dismiss but agree that § 1404(a) is clearly an appropriate mechanism. While it appears that the Sixth Circuit does not definitively reject Rule 12(b)(6) as a suitable way to enforce a forum-selection clause, the court is "not required to do so" and "may also transfer the matter to the appropriate federal forum" pursuant to 28 U.S.C. § 1404(a). *Kelly v. Liberty Life Assurance Co.*, No. 17-139-DLB, 2018 U.S. Dist. LEXIS 11895, at *10 (E.D. Ky. Jan. 25, 2018)(denying the motion to dismiss based on the forum-selection clause in order to transfer the case to the contractually selected forum).

While enforcing a forum-selection clause through a motion to dismiss might not be wrong, transfer under § 1404 is always a proper mechanism. "For the federal court system, Congress

16

has...provided for transfer, rather than dismissal, when a sister federal court is the more convenient place for trial of the action." *Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422, 430, 127 S. Ct. 1184, 1190 (2007); *Boling v. Prospect Funding Holdings, LLC*, 771 F. App'x 562, 567 (6th Cir. 2019)(citing *Atlantic Marine*, 571 U.S. at 60)("Section 1404(a) codifies 'the doctrine of *forum non conveniens* for the subset of cases in which the transferee forum is within the federal court system; in such cases, Congress has replaced the traditional remedy of outright dismissal with transfer.'"). Other Courts in the Sixth Circuit have similarly found a motion to transfer to be the "more appropriate means of enforcing the forum-selection clauses." *C&S Outdoor Power Equip., Inc. v. Odes Indus. LLC*, No. 1:19-cv-01029-STA-jay, 2019 U.S. Dist. LEXIS 150104, at *14 (W.D. Tenn. Sep. 4, 2019); *Mgmt. Registry, Inc. v. A.W. Cos.*, No. 0:17-cv-05009-JRT-KMM, 2019 U.S. Dist. LEXIS 226063, at *30 (D. Minn. Sep. 12, 2019)("A motion to transfer venue under 28 U.S.C. § 1404(a) is a more appropriate vehicle for enforcing a forum-selection clause than a motion to dismiss under Rule 12(b)(3).").

Having determined that transfer is the more appropriate method of enforcing the forum-selection clause, the Court now applies the proper analysis. "A district court ruling on a motion to transfer under 28 U.S.C. § 1404(a) should consider 'the private interests of the parties, including their convenience and the

17

convenience of potential witnesses,' public-interest concerns, as well as whether the transfer is in the interests of justice." *Boling v. Prospect Funding Holdings, LLC*, 771 F. App'x 562, 567 (6th Cir. 2019)(citing *Moses v. Bus. Card Express Inc.*, 929 F.2d 1131, 1137 (6th Cir. 1991); *Minn. Supply Co. v. Mitsubishi Caterpillar Forklift Am., Inc.*, 822 F. Supp. 2d 896, 910 (D. Minn. 2011)("Under Section 1404(a), a court considers 'the convenience of [the] parties and witnesses,' and the 'interest of justice'. . .[and] the presence of a forum-selection clause 'will be a significant factor that figures centrally in the district court's calculus.'").

A valid and enforceable forum-selection clause alters the analysis because "the plaintiff's choice of forum no longer receives any weight," the nonmovant "bears the burden of establishing that transfer to the forum for which the parties bargained for is unwarranted," and "the court should only consider public-interest factors," which "rarely defeat a transfer motion" making the "practical result" that "forum-selection clauses will almost always control." *Boling v. Prospect Funding Holdings, LLC*, 771 F. App'x 562, 568 (6th Cir. 2019); *MRP Trading I A, LLC v. Eberhart*, 526 F. Supp. 3d 470, 476 (D. Minn. 2021)(citing *Atl. Marine*, 571 U.S. at 59-60)("A court deciding whether to transfer a case based on a forum selection clause owes no deference to a plaintiff's choice of forum and 'must deem the private-interest

factors' that normally inform the § 1404(a) inquiry 'to weigh entirely in favor of the preselected forum.'"). "As the Supreme Court noted in *Atlantic Marine*, when a defendant invokes a valid forum-selection clause, 'a district court should transfer the case unless extraordinary circumstances unrelated to the convenience of the parties clearly disfavor a transfer.'" *Valspar Corp. v. E.I. DuPont de Nemours & Co.*, 15 F. Supp. 3d 928, 934 (D. Minn. 2014).

Plaintiff argues that the public-interest factors do not weigh in favor of using an alternate forum because Kentucky has a strong interest in deciding this case where a Kentucky citizen was harmed and her claims arise under Kentucky law. However, Plaintiff has failed to convince the Court that Kentucky has a substantially greater interest due to her citizenship than Minnesota has in enforcing a contract with a Minnesota corporation. Additionally, because the contract dictates that Minnesota law is controlling, presumably the Minnesota court, a court more familiar with Minnesota law, is the more appropriate venue. *See Onyx & Rose, LLC v. T1 Payments*, LLC, No. 3:19-CV-489-CRS, 2019 U.S. Dist. LEXIS 219879, at *12 (W.D. Ky. Dec. 23, 2019).

Additionally, "it is not unfair to enforce a forum-selection clause providing a venue more proximal to one party than another." *Kelly v. Liberty Life Assurance Co.*, No. 17-139-DLB, 2018 U.S. Dist. LEXIS 11895, at *11 (E.D. Ky. Jan. 25, 2018). And "mere 'inconvenience to a party is an insufficient basis to defeat an

otherwise enforceable forum selection clause.'" *Servewell Plumbing, LLC v. Fed. Ins. Co.*, 439 F.3d 786, 791 (8th Cir. 2006). Therefore, this matter shall be transferred, pursuant to § 1404(a), to the Federal District Court for the District of Minnesota.

### c. THE DATING APP CLAIMS

There are three causes of action related to Dating App. First, Plaintiff alleges that Defendants are liable for the fraudulent inducement of the Dating App investment because Rosenberg falsely represented that he had a buyer for the dating app, "was intentionally sabotaging the Dating App by making excessive and unapproved changes," directing her employees to do work for her personal companies at Love Shopping's expense, and making personal charges to Love Shopping, which Courtelis relied on by investing in the Dating App. [Id. at ¶¶ 100-110]. Plaintiff's second cause of action similarly asserts that Defendants "negligently represented to Ms. Courtelis (1) that Match.com was interested in purchasing the App, (2) the progress of the development of the App, (3) changes Rosenberg made to the App, and (4) that certain expenses were business expenses related to the development of the App," which Courtelis justifiably relied on when she decided to invest initially and to continue to invest in the Dating App. [DE 5 at ¶¶ 112-114]. Lastly, Plaintiff alleges Defendants are liable for Civil Conspiracy for the Dating App investment because Defendants joined together and "developed a

plan whereby they would (1) induce Ms. Courtelis to invest in The Lodge Dating App by claiming Match.com was interested in purchasing the App and (2) induce her continued investment in the App by intentionally delaying the development and release of the App in order to maximize economic contributions from Ms. Courtelis into the project." [DE 5 at ¶ 120].

Defendant argues that the Dating App Claims must be dismissed based on three theories: (1) the claims are subject to a mandatory arbitration clause contained in the Operating Agreement (2) that Minnesota is an adequate alternative forum considering the intertwined nature of the Dating App and Matchmaking Claims (3) Courtelis is not the real party in interest and lacks standing.

The Court begins the analysis focusing on *forum non conveniens* and finds that this matter must be transferred to Minnesota with the other claims even though the Dating App Claims are not subject to a forum-selection clause. "The principle of *forum non conveniens* permits a court to decline jurisdiction even though venue and jurisdiction are proper, on the theory that for the convenience of the litigants and the witnesses, the action should be tried in another judicial forum." *Mizokami Bros. of Ariz., Inc. v. Mobay Chem. Corp.*, 660 F.2d 712, 717 (8th Cir. 1981) (citations and internal quotation marks omitted).

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any

other district or division where it might have been brought." 28 U.S.C. § 1404(a). "[A] a district court has much discretion in deciding such motions." *ProMove, Inc. v. Siepman*, 355 F. Supp. 3d 816, 824 (D. Minn. 2019). The purpose of § 1404(a) is "to prevent waste of time, energy, and money; and to protect litigants, witnesses, and the public against unnecessary inconvenience and expense." *Bunch v. W.R. Grace & Co.*, No. 04-218-DLB, 2005 U.S. Dist. LEXIS 44277, at *8 (E.D. Ky. July 21, 2005)(citing *Van Dusen v. Barrack*, 376 U.S. 612 (1964)).

First, the Court must ask whether this action could have been brought in the Minnesota District Court. It is clear that it could have been brought there, and Plaintiff does not dispute that she is subject to Minnesota's long-arm statute. *Valspar Corp. v. Lukken Color Corp.*, 495 N.W.2d 408, (Minn. 1992)(Minnesota long-arm statute "extend[s] the personal jurisdiction of Minnesota courts as far as the Due Process clause of the federal constitution allows"). Second in deciding whether transfer should occur under Section 1404(a), "the district court must weigh three factors, which are whether transfer would be (1) convenient for the parties, (2) convenient for the witnesses, and (3) in the interests of justice." *Villeda v. Inland Marine Serv.*, No. 20-cv-1412 (WMW/DTS), 2021 U.S. Dist. LEXIS 57530, at *3 (D. Minn. Mar. 26, 2021).

"In the typical case not involving a forum-selection clause, a district court considering a § 1404(a) motion (or a *forum non conveniens* motion) must evaluate both the convenience of the parties and various public-interest considerations." *Atl. Marine,* 134 S. Ct. at 581. Because "Section 1404(a) is merely a codification of the doctrine of *forum non conveniens,*" this Court has already addressed part of the analysis and concluded that the public-interest factors favor transfer leaving only the convenience of the parties and the interest of justice to be considered. The private factors the Court is required to consider are: "the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive." *Gulf Oil*, 330 U.S. at 508.

The convenience to the parties is neutral. Regarding the convenience for the witnesses, there are witnesses in both Kentucky, like Courtelis, and witnesses in Minnesota, like Rosenberg and her staff as well as the representatives of TVS. Thus, the majority of witnesses reside in Minnesota. More, because the Matchmaking Claims must be transferred to Minnesota and there will likely be overlap in the witnesses for the two sets of claims, transfer is more convenient. No witness will suffer additional

inconvenience if the Dating App Claims are transferred as well because this will prevent them from having to be a part of two litigations in two different states.

In evaluating whether the interests of justice favor transfer, "a district court considers "any case-specific factors relevant to convenience and fairness to determine whether transfer is warranted." *Villeda v. Inland Marine Serv.*, No. 20-cv-1412 (WMW/DTS), 2021 U.S. Dist. LEXIS 57530, at *6 (D. Minn. Mar. 26, 2021). While plaintiff's choice of forum is to be given substantial weight, plaintiff's choice is still just simply "one factor to be considered." *Ahlstrom v. Clarent Corp.*, Civ. No. 02-780, 2002 U.S. Dist. LEXIS 25394, 2002 WL 31856386, at *3 n.9 (D. Minn. Dec. 19, 2002).

Another important factor, judicial economy, heavily favors transferring similar claims to avoid wasting time, energy, and money. "The avoidance of duplicative or piecemeal litigation is a factor that weighs in favor of transferring an action to a district in which all parties can be joined in a single action." *GMAC/Residential Funding Corp. v. Platinum Co. of Real Estate & Fin. Servs., Inc.*, Civ. No. 02-1224, 2003 U.S. Dist. LEXIS 4105, 2003 WL 1572007, at *3 (D. Minn. Mar. 13, 2003); *see also Rader v. Calloway Labs., Inc.*, No. 15-48-ART, 2015 U.S. Dist. LEXIS 194744, at *11 (E.D. Ky. Aug. 3, 2015)("Rather than dismiss the state law claims, the Court will transfer the claims to the District of

Massachusetts with the non-compete claims, pursuant to 28 U.S.C. § 1404(a).") That the Matchmaking Claims *must* be litigated in Minnesota, weighs heavily in favor of transferring the remaining claims, especially given the intertwined nature of the claims. Plaintiff claims the Matchmaking Contract was a guise to induce her to invest in the Dating App, that Defendants exploited Plaintiff's vulnerabilities that were obtained through their matchmaking relationship to induce her to invest in the Dating App, and that at times the money intended for matchmaking services was used to support the Dating App. [DE 5 at ¶¶ 2-3, 95]. Therefore, litigating all claims in Minnesota avoids piecemeal litigation and preserves judicial economy as Section 1404(a) intended. The Dating App Claims are to be transferred as well.

### d. UNJUST ENRICHMENT

Count VII alleges that "Defendants have received tangible benefits to which they were not entitled, or which have unjustly enriched them at the expense, and to the detriment, of Ms. Courtelis." [DE 5 at ¶ 157]. The claim for unjust enrichment must be transferred to Minnesota with the other claims because the forum-selection clause applies, and even if it did not apply, *forum non conviens* requires transfer to avoid piecemeal litigation.

Unjust enrichment claims are subject to forum-selection clauses when deciding court must address the validity and substance

25

of the contract containing the forum-selection clause in deciding the unjust enrichment claim. *Alliance Communs. Coop., Inc. v. Global Crossing Telecomms., Inc.*, No. 06-4221, 2007 U.S. Dist. LEXIS 48091 (D.S.D. July 2, 2007)(holding that the unjust enrichment claim was subject to the forum-selection clause because "[t]he viability of [plaintiff's] unjust enrichment or quantum meruit claim thus depends on whether [defendant] received a benefit without paying for it, which in turn depends on whether [defendant] fulfilled its obligations under the [contract]"); *see also Digital Envoy, Inc. v. Google, Inc.*, 319 F. Supp. 2d 1377, 1381 (N.D. Ga. 2004) (transferring action, including unjust enrichment claims, under 28 U.S.C. § 1404(a) in accordance with a valid forum-selection clause).

In a recent case out of the District Court for the District of South Dakota, the defendant argued that the forum-selection clause did not apply to the unjust enrichment claim as a quasi-contractual claim. The court, however, concluded that the unjust enrichment claim fell within the forum-selection clause:

> The Agreement between the parties provides that "any and all claims arising from this Agreement shall be litigated if at all in the United States District Court for the District of South Dakota." The basis of Faloni's promissory estoppel and unjust enrichment claims is that Citibank has not paid Faloni a nineteen percent fee as Citibank promised to do in the Agreement. Judge Hammer stated that, "all five counts of the Complaint will involve

> similar, if not identical, questions of both
> law and fact, as well as the same witnesses
> and documents." (Doc. 33, p. 9.) Tellingly,
> the Complaint describes the factual
> allegations as "Allegations Applicable to All
> Counts." (Complaint, p. 1.) In the promissory
> estoppel and unjust enrichment claims alleged
> in Counts II and III, Faloni does not assert
> any additional facts but instead "repeats and
> re-alleges" the allegations contained earlier
> in the Complaint, including those in the
> breach of contract claim (Count I). This
> demonstrates that common facts are shared
> between the claims and that there is a logical
> and causal connection between the Agreement
> and Faloni's unjust enrichment and promissory
> estoppel claims. Faloni's allegations
> indicate that the Agreement is the basis for
> the parties' relationship and the basis for
> this lawsuit, and Faloni's promissory estoppel
> and unjust enrichment claims involve
> substantially the same operative facts as its
> breach of contract claim.

*Faloni & Assocs., LLC v. Citibank N.A.*, No. CIV 19-4195, 2021 WL
1381203, at *6 (D.S.D. Apr. 12, 2021).

The Northern District of Ohio found that the forum-selection
clause applied to all of the plaintiff's claims including the claim
for unjust enrichment. Plaintiff Thorrez and defendant LuK
Transmissions entered into a contract whereupon Thorrez agreed to
manufacture and deliver parts to defendant. *C. Thorrez Indus. v.
LuK Transmissions Sys., LLC*, No. 5:09-cv-01986, 2010 U.S. Dist.
LEXIS 34724, at *14 (N.D. Ohio Apr. 8, 2010). Plaintiff asserted
that the defendant was unjustly enriched because Thorez "conferred
a benefit upon LuK through the manufacture and delivery of
automotive parts" and that "it is unjust to allow LuK to retain

27

and enjoy the benefit of conferred upon it by Thorrez without payment." The court explained that the unjust enrichment claim was "inseparable from its contract claim" because "[a]ny evaluation of this claim, again, will require a court to determine whether a valid contract exists, and whether the parties fulfilled their duties and obligations under the contract, a decision which the forum selection clause requires to be made in Wayne County." *Id.* at *15.

The unjust enrichment claims related to the Matchmaking Contract, like the claims in *Thorrez*, are inseparable from the other claims because the deciding court will have to look to the terms of the contract in their analysis. Like the *Faloni* court, there will be a lot of overlap with the Matchmaking Claims and the unjust enrichment claims including similar questions of both law and fact, as well as the same witnesses and documents. Additionally, regarding her unjust enrichment claim no new facts are added to that portion of the Complaint, instead Plaintiff "re-alleges" all the preceding paragraphs "and incorporates them herein as set forth in full" [DE 5 at ¶ 156] demonstrating that common facts are shared between the claims and that there is a logical and causal connection between the claims. Therefore, any unjust enrichment claims related to the matchmaking services must be transferred in accordance with the forum-selection clause,

which deprives this Court of the authority to address the merits of the claim.

### IV. CONCLUSION

For the reasons set forth above, the Court denies Defendants' Motion to Dismiss [DE 6] because a transfer pursuant to 28 U.S.C. § 1404(a) is the appropriate mechanism to enforce a forum-selection clause. The remaining claims must also be transferred in the interest of justice to avoid piecemeal litigation. Accordingly, **IT IS HEREBY ORDERED** as follows:

(1)   Defendants' Motion to Dismiss is **DENIED WITHOUT PREJUDICE.**

(2)   The Clerk of Court is hereby **ORDERED** to **TRANSFER** this action to the Federal District Court for the District of Minnesota transfer pursuant to 28 U.S.C. § 1404(a).

(3)   This mater is stricken from the active docket of this Court.

This the 31st day of March, 2022.



Signed By:

_Joseph M. Hood_

Senior U.S. District Judge